525-0192 W.C. Standard Forwarding Appellant by Stephen Klyzak v. Illinois Workers' Compensation Comm'n et al., Jerry Connor, Appalee by Kevin Morrison. Mr. Klyzak, you may proceed. Thank you. May it please the Court and Council, my name is Stephen Klyzak. I represent Standard Forwarding, the employer in Jerry Connor's Workers' Compensation case. Standard Forwarding is appealing the circuit court's affirmation of the Workers' Compensation Award of Permanent Total Disability. Mr. Connor injured himself while working for Standard Forwarding on September 25, 2019. He was treated mostly for a left shoulder injury. Mr. Connor had shoulder surgery on February 27, 2020, which was a revision of a rotator cuff tear as well as a subacromial decompression and removal of anchors that were placed in the left shoulder due to a prior work accident. An FCE was performed on March 10, 2021, which indicated Mr. Connor could lift up to 50 pounds from floor to waist, but no lifting or carrying above the waist with his left arm. He was also indicated to be able to push up to 47.5 pounds and pull up to 70 pounds. These restrictions did not allow Mr. Connor to return back to work as a truck driver, so vocational rehabilitation was begun. Mr. Connor chose David Patsavis as his vocational counselor, and the testimony of Mr. Patsavis indicates that that was at the advice of Mr. Connor's attorney. Mr. Patsavis testified Mr. Connor fell within the highly skilled level of the Department of Labor standards. It was a level eight. Mr. Connor completed job search logs for his job search that took place from May 25, 2021 through March 1, 2023. Mr. Connor testified he put in approximately 1,517 applications for prospective employment. Mr. Patsavis testified a viable and stable labor market did not exist based upon the duration of his job search, that Mr. Connor had not worked for three and a half years, that his age was 55, which Mr. Patsavis testified Social Security considered was advanced, that employers would question why Mr. Connor would be willing to take a job paying less than what he was paid before. Mr. Patsavis also testified that Mr. Connor's experience or history as a union rep could have negative impact on his prospective employment for fear that a prospective employer would have to go union. Mr. Patsavis also testified Mr. Connor's earning potential was somewhere between $13 to $16 an hour. Mr. Patsavis testified he never asked Mr. Connor to apply for part-time employment, and this was according to Mr. Patsavis. He assumed he was only to look for full-time employment because Mr. Connor was working full-time at the time of the accident. However, Mr. Patsavis also testified he was never told by the employer or the employer's attorney to limit the search to full-time employment. Mr. Patsavis testified part-time employment is viable as long as it doesn't involve commissions. Mr. Patsavis also testified he never had Mr. Connor look for employment in either the fast food or retail arenas. Mr. Patsavis testified there was a shortage of fast food and retail workers as a result of the COVID restrictions winding down at that time that Mr. Connor was in his job search. Mr. Patsavis also testified both fast food and retail workers generally unload trucks, stock, and clean, but he would not know the duties of a particular job that was open until Mr. Connor applied and had an interview and was told of the job duties. The evidence in this case does not show that Mr. Connor has been deemed to be medically permanently totally disabled. The commission awarded permanent total disability based upon an odd-lot basis. According to case law, odd-lot permanent total disability is shown when there is a diligent but unsuccessful job search or there is no stable labor market that exists for the claimant. We argue that the job search was not diligent based on there being no attempts to be hired part-time. Do you have authority to support that position? I do not have authority, Your Honor, but I couldn't find any authority. I believe the facts are what the facts are, and the facts are that Mr. Connor did not look for a part-time job, nor did he look for a job in well-known there was a shortage of workers for fast food as well as retailers at the time that he was looking for jobs. Mr. Pat Savas wouldn't know if Mr. Connor couldn't do these particular job duties for these prospective jobs unless he was actually applying for them. They're based on Mr. Pat Savas' own testimony. Part-time employment is viable, and this part-time employment was not looked into or was not entertained by Mr. Connor as part of his job search. Did the employer retain a counselor? We did not, Your Honor. In conclusion, Mr. Connor did not meet his burden of proof in order to be awarded permanent total stability. The Commission's decision is against the manifesto, the evidence, there being a lack of any attempts on his part to find part-time employment or any type of employment within the fast food or retail arenas. Therefore, we argue that the Commission's decision must be reversed and the case be remanded back to the Commission to determine an appropriate and proper PPD award for Mr. Connor. Thank you. So how did the Commission err? The Commission erred in finding that Mr. Connor was an outlaw permanently totally disabled, even though he failed to look for part-time employment or look for any type of employment within the fast food or retail industries. But you're not aware of any case law that supports that position, the failure to search those industries? I do not, Your Honor, but the case law is there has to be a diligent search, and I think it's common sense that a diligent search would be searching in all appropriate areas of employment, which he did not do. He did not search for part-time, he did not search for fast food, he did not search for retail jobs. So I think that falls within the case law, the fact that he failed to do a diligent search. Do you cite to that case law? Again, I don't have case law. I looked for case law. I could not find case law, but again... No, no, no, you just said that there's case law that says you have to make a diligent search, so forth and so on. Are you citing to that in your brief anywhere? Yes, Your Honor, I cited to the case of... Was it Alano? It was Alano, Your Honor, yes. And I noticed I failed to put... I think I forgot to list that in my points and authorities. I apologize for that. Okay, any further questions from the court? Okay, thank you. You'll have time in reply. Thank you. Counsel, you may respond. May it please the court, my name is Kevin Morrison. I represent Mr. Jerry Connor. I'll keep this brief. Most of what Mr. Kleizek is asking this court to do is just simply re-weigh evidence. Every issue he brought forth today has already been addressed directly by the commission. As we agreed, this is a manifest weight claim. And the commission weighed the diligence of Mr. Connor's job search and found 1,500 jobs would qualify him as a diligent job search. 500 of those were after respondent had ceased formal vocational assessment. And as pointed out by Justice Mullen, the respondent never chose to bring their own vocational counselor to bring any of these facts. I agree with Mr. Kleizek in the sense that we only can satisfy this under two of the three provisions. We did not prove this as a medically totally disabled person, but we did, I believe in our evidence support that he was an odd lot. How did we do that? By showing his 1,500 job searches that were unsuccessful. We also did that by bringing the only vocational counselor who testified and stated that there was no stable job market for this gentleman after review of all of his work and diligence. The only evidence presented at the time supports the conclusions of the commission. So, I believe that the commission was correct in their assessment and the facts on this and the evidence support them. So, I thank you for your time. I appreciate the opportunity today. Any questions from the court? The council? No? No? Okay. Councilor Kleizek, you may reply. Thank you, Your Honor. Just very briefly, Mr. Pat Savas was Petitioner's own vocational counselor. It is Mr. Conner's initial burden to prove that a diligent job search was done. It is not until after that is met or that a viable labor market does not exist until the burden shifts over to the employer. That was never met by Mr. Conner. His initial burden was never met. Therefore, there is no requirement on the part of the employer to retain their own vocational expert to meet a burden that has not shifted yet. Again, we are asking that the commission's decision be reversed and the case be remanded for an appropriate and proper award of PPD. Thank you. Thank you. Thank you, Councilor. Questions from the court? Okay. Well, thank you, Council, both for your arguments on this matter this afternoon. It will be taken under advisement and a written disposition shall issue. And at this time, the clerk of our court will escort you from our remote courtroom. Have a great afternoon. Thank you, Your Honor. Thank you, everyone.